**EOD**
09/30/2020

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 17-42053 |
| | § | |
| CAROL ALISON RAMSAY ROSE, | § | CHAPTER 11 |
| | § | |
| Debtor. | § | |
| ——————————————— | § | |
| | § | |
| EQUIS EQUINE, LLC AND | § | |
| ELIZABETH WESTON, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADV. PROC. NO. 17-4131 |
| | § | |
| CAROL ALISON RAMSAY ROSE, | § | |
| CAROL ROSE, INC., LORI AARON, | § | |
| PHILLIP AARON, AARON RANCH, | § | |
| AND AARON'S RANCH, INC., | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case is before the Court on the Post-Trial Application for Attorneys' Fees by Equis

Equine, LLC and Elizabeth Weston (collectively, "**Weston**").  Carol Rose ("**Rose**") and Carol

Rose, Inc. (collectively, the "**Rose Parties**") object to the allowance of the amount requested in

the application.  The Court conducted an evidentiary hearing on May 16, 2019 and, at the end of

the hearing, took the application under advisement in order to prepare a detailed written ruling.[1]

---

[1] In addition, at the time of the hearing, the parties had filed several motions for reconsideration with respect to
the memorandum opinion and order giving rise to the fee application.

## I.  BACKGROUND

### A.  State Court Litigation

The parties are familiar with the underlying dispute and the Court will not repeat all its prior findings.  In summary, and as relevant to Weston's fee application, the underlying litigation began when the Rose Parties sued Lori Aaron, Phillip Aaron and Aaron Ranch (collectively, the "**Aarons**") in Texas state court on October 3, 2013 (the "**Aaron Ranch Lawsuit**").  In various iterations of their state court complaint, the Rose Parties sought between $2.6 million and $12.2 million in damages arising out of the Aarons' alleged breaches of contract as well as the Aarons' alleged (1) fraudulent inducement to enter into an agreement with respect to certain horses; (2) fraudulent inducement to enter into a lease her horse ranch in Gainesville, Texas (the "**Gainesville Ranch**"); (3) invasion of solitude; and (4) defamation.  The Aarons filed counterclaims seeking between $5 million and $20 million in damages for (1) statutory fraud, common law fraud, and fraudulent misrepresentation; (2) breach of fiduciary duty; (3) invasion of privacy; (4) tortious interference with contracts and prospective business relations; (5) business disparagement; (6) specific performance and constructive trust; (7) trespass to real property; (8) breach of contract; (9) accounting; (10) declaratory judgment; (11) civil conspiracy; (12) violations of the Texas Theft Liability Act (the "**TTLA**"); and (13) equitable subrogation and constructive trust.

Two additional lawsuits were filed after the Aaron Ranch Lawsuit commenced.  The first was a lawsuit filed in state court on July 16, 2014 by Rose against her ex-horse trainer, Jay McLaughlin, who was later employed by the Aarons (the "**McLaughlin Lawsuit**").  That action was consolidated with the Aaron Ranch Lawsuit in state court on September 25, 2015.  The second lawsuit was filed in state court on August 7, 2015 by Weston against the Aarons, Rose, and others

2

(the "**Weston Lawsuit**").  Weston filed the lawsuit after unsuccessfully attempting to intervene in the Aaron Ranch Lawsuit.[2]

In the Weston Lawsuit, Weston asserted claims against the Rose Parties for (1) violations of Texas Business and Commerce Code § 2-328; (2) common law fraud, fraudulent inducement, and fraud by nondisclosure; (3) negligence and negligent misrepresentation; (4) violations of the TTLA, (5) violations of the Texas Deceptive Trade Practices Act ("**TDTPA**"); and (6) conspiracy, aiding, and abetting.  These are the same claims Weston asserted in her attempted intervention in the Aaron Ranch Lawsuit.  If Weston had succeeded on all her claims against the Rose Parties, her actual money damages would have been approximately $450,000 plus exemplary damages and attorneys' fees.

Weston's claims against the Rose Parties centered around a "complete dispersal sale" conducted by Rose in August 2013.  Weston contended that Rose had violated Texas law by using the Aarons as "puff" bidders during the auction of her horses.  Weston also contended that the auction was tainted by Rose's secret use of reserves.  Weston raised various fraud claims with respect to the dispersal sale catalogue, the misrepresentations of the auctioneers and announcers during the auction, and the false bidding by the Aarons during the auction.  Finally, Weston contended that Rose violated the TTLA by inducing her to buy several horses and embryos at the auction through deception, material omissions, and false representations.  (Weston withdrew her claim for violations of the TDPA prior to trial.)

The discovery process was contentious and went on for years in state court.  Although Weston agreed to be deposed several times, the other parties fought over depositions and the production of documents.  The eventual document production was massive, and the documents

---

[2] Rose opposed Weston's attempted intervention on the grounds that the Aaron Ranch Lawsuit was about to go to trial.

produced to Weston required analysis by her attorneys.  The litigation was novel inasmuch as Weston's claims relating to "puff" bidding and the dispersal sale are rarely litigated in Texas courts.  Weston also had to defend herself against a claim by the Aarons for tortious interference with their relationship with Rose.  Rose's decision to file for bankruptcy prior to trial added more complexity and necessitated Weston's retention of counsel with bankruptcy experience.

Weston employed two law firms during the course of the Weston Lawsuit.  Davis & Santos, P.C. ("**D&S**"), a San Antonio-based law firm, represented Weston in connection with the state court litigation prior to bankruptcy.  Weston retained Baker Botts, LLP ("**BB**"), after the Rose Parties filed for bankruptcy to represent her in bankruptcy matters and assist with the trial of her claims in bankruptcy court.  D&S and BB jointly represented Weston during the Rose Parties' bankruptcies.

### B.  The Rose Parties File for Bankruptcy

The Rose Parties filed petitions for relief under chapter 11 of the Bankruptcy Code in September 2017.  The Rose Parties removed all the pending litigation to bankruptcy court on October 25, 2017, which commenced several adversary proceedings.  The Aarons and McLaughlin moved to remand the Rose Parties' lawsuits against them back to state court.  Rose and Weston objected, arguing that the parties' claims against the Rose Parties were "core" claims against the bankruptcy estate that this Court would necessarily decide as part of the claims allowance process. The Court denied the motions to abstain following a hearing on February 13, 2018.

Prior to the hearing on the motion to abstain, in January 2018, the Aarons, McLaughlin and Weston filed proof of their claims against the Rose Parties.  They stated that the amounts of their claims were unknown and attached materials relating to the state court litigation to their proofs of claim.  Weston's complaint did not seek damages in a specific amount but asserted ten claims

4

against the Rose Parties, the Aarons, and certain other alleged co-conspirators for alleged fraud relating to a pre-petition auction and other violations of Texas law.  Weston also sought a declaration that Carol Rose, individually, could not discharge her debt to Weston in bankruptcy.

The Court administratively consolidated the claim objections with the adversary proceedings for purposes of trial.  The parties agreed that this Court should try some, but not all, of the state law claims between the parties.[3]  Despite the (relatively) limited nature of the trial, the parties submitted a 92-page joint pre-trial order along with a 294-page exhibit list.  The Rose Parties included 368 exhibits on their original exhibit list, the Aarons included 762 exhibits, and Weston included 592 exhibits.

The Court tried the parties' claims and counterclaims over nine days in May and June 2018. Much of the trial was focused on the Aaron Ranch Lawsuit.  At the conclusion of trial, the Court invited the parties to submit proposed findings and conclusions for the Court's consideration as well as written closing arguments.  In addition, the Court scheduled a hearing on July 6, 2018, for oral closing arguments.  The parties filed closing briefs and proposed findings on or before presenting their closing arguments on July 6, 2018.

For the reasons explained in the Court's memorandum opinion entered on January 23, 2019 (and amended on September 27, 2019), this Court found in favor of Weston on the following claims: (i) violations of TEX. BUS. & COM. CODE § 2-328 (prohibiting "puff" bidding); (ii) violations of TEX. ADMIN. CODE § 67.70 (prohibiting false advertising of an auction); (iii) common law fraud; (iv) fraudulent inducement; (v) fraud by non-disclosure; (vi) negligence; (vii) negligent misrepresentation; (viii) violations of the Texas Theft Liability Act ("**TTLA**"); (ix) equitable

---

[3] This Court did not try any claims by non-debtors against non-debtors, such as Weston's claims against the auctioneers.  In addition, the Aarons withdrew their invasion of privacy claim as well as their business disparagement claim prior to trial.  Rose withdrew her invasion of solitude and defamation claims prior to trial, and Weston withdrew her TDTPA claim prior to trial.

subrogation; and (x) as to Rose, individually, a determination of non-dischargeability under 11

U.S.C. § 523(a)(2)(A).[4]  The Court awarded Weston actual damages in the amount of $437,918.12,

plus pre-judgment interest in the amount of $68,807.13, as well as post-judgment interest and the

remedy of rescission with respect to her purchase of SHINERS LENA DOC at the auction.  The

Court also awarded Weston her attorneys' fees for prevailing on the TTLA claim and ordered

Weston to file an application for attorneys' fees and court costs within thirty days.

### C.  Weston's Application for an Award of her Attorneys' Fees and Court Costs

Weston timely filed an application seeking an award of her attorneys' fees in connection

with her claim for TTLA violations.  *See* TEX. CIV. PRAC. & REM. CODE § 134.005.  The supporting

records include hundreds of pages of detailed time entries from October 2014 through January

2019.[5]  As discussed below, the original application seeks an award of $1,332,718.99 in attorneys'

fees and $58,753.45 in recoverable court costs for a grand total of $1,391,472.44.  In addition,

Weston filed a supplemental application for additional attorneys' fees that she had not yet been

billed at that time of the original application and that she incurred responding to the Rose Parties'

objections to her fee application.  The supplemental application increases the requested award to

$1,537,143.44.

In her original application, Weston seeks an award of attorneys' fees and costs incurred by

D&S and BB.  In the original application, Weston seeks an award for 3,690.6 hours billed by

timekeepers at D&S from October 7, 2014 through January 31, 2019 for a total charge of

$885,132.17; its blended rate was $240.[6]  Weston also seeks an award for 729.9 hours billed by

---

[4] Weston withdrew her claim for violations of the TDTPA prior to trial.

[5] Although the parties were engaged in litigation for years prior to Rose's bankruptcy, the bulk of Weston's attorneys' fees were incurred when the Rose Parties removed the litigation to bankruptcy court.

[6] David Santos was the primary billing attorney at D&S.  He testified at the hearing on May 16, 2019, that the hourly rate he charged, $350, is a discounted rate that reflects his longstanding relationship with Weston as her attorney in various matters over a decade.  He further testified that his normal hourly rate would exceed $500 per hour.

6

timekeepers at BB for a total charge of $447,586.82; its blended rate was $613.[7]  Counsel states in

affidavits supporting the application that the legal serves rendered, and tasks performed, advanced

all of Weston's claims, and segregation of their attorneys' fees between the TTLA claim and her

other claims is not practicable or required by Texas law.

The Rose Parties object to the fee application, asserting that Weston has established, at

most, entitlement to $360,762.18 in fees and $362.23 in costs.  The Rose Parties raised more than

1,900 specific objections to individual billing entries of Weston's counsel.  The Rose Parties object

to many of the entries on multiple grounds.  The Rose Parties asserted objections to D&S's pre-

petition fees, D&S's post-petition fees, and BB's fees.  Their objections to specific entries by D&S

and BB fell within one or more of the following thirteen categories:[8]

> (1) "completely unrecoverable" (D&S pre-petition $233,332.08; D&S post-petition
> $30,360; BB post-petition $176,329.50), meaning that the Rose Parties believe the time
> entry is not related to the TTLA claim;
>
> (1a) "partially unrecoverable" (D&S pre-petition $336,189.08; D&S post-petition
> $281,243.34; BB post-petition $272,565.50), meaning that the Rose Parties believe
> some of the time entry is not related to the TTLA claim;
>
> (2) "not segregated" (D&S pre-petition $317,040.08; D&S post-petition $284,363.34; BB
> post-petition $302,798.50), meaning that the Rose Parties believe the time entry does
> not segregate between recoverable and unrecoverable time;
>
> (3) "vague" (D&S pre-petition $134.553.58; D&S post-petition $28,722; BB post-petition
> $93,129.50), meaning that the Rose Parties believe the time entry is too vague to permit
> a meaningful review;
>
> (4) "block billed" (D&S pre-petition $134,553.58; D&S post-petition $198,986.67; BB
> post-petition $250,022), meaning that the Rose Parties believe the time entry fails to
> indicate the time spent on discrete tasks within the entry;
>
> (5) "billing judgment" (D&S pre-petition $14,723.33; D&S post-petition $14,150; BB
> post-petition $231,322.50), meaning that the Rose Parties believe the time entry is
> excessive or duplicative of the entries of other timekeepers;
>
> (6) "non-recoverable cost" (D&S pre-petition $0; D&S post-petition $0; BB post-petition
> $0) meaning that the Rose Parties believe the time entry relates to a particular matter
> that the parties agree was settled;

---

[7] Omar Alaniz was the primary billing attorney at BB.  He charged Weston $725 per hour initially, and later increased his hourly rate to $850.  At the hearing on May 16, 2019, Mr. Santos testified that these are discounted rates Mr. Alaniz negotiated with Weston.

[8] These categories mirror the categories the Rose Parties used in their objections to a separate fee application by counsel for the Aarons in another adversary proceeding.

(7) "billing error" (D&S pre-petition $25; D&S post-petition $0; BB post-petition $0), meaning that the Rose Parties believe the fee or cost is an exact duplicate of another;

(8) "travel expenses" (D&S pre-petition $44,825; D&S post-petition $60,695; BB post-petition $11,856), meaning that the Rose Parties believe Weston is seeking attorneys' fees for non-working travel time;

(9) "unrecoverable – bankruptcy fee" (D&S pre-petition $3,845; D&S post-petition $23,757.50; BB post-petition $192,361), meaning that the Rose Parties believe the time was spent on core bankruptcy matters and prosecuting non-dischargeability;

(10) "unrecoverable fees that relate to parties other than Rose" (D&S pre-petition $345,064; D&S post-petition $6,740; BB post-petition $166,111.50), meaning that the Rose Parties believe the time was spent prosecuting claims against parties other than Rose or defending against claims asserted by parties other than Rose;

(11) "unrecoverable fees that pre-date lawsuit" (D&S pre-petition $96,943.15; D&S post-petition $0; BB post-petition $0), meaning that the fees were incurred prior to Weston's lawsuit against the Rose Parties, including fees incurred in connection with Weston's unsuccessful attempt to intervene in the Aaron Ranch Lawsuit; and

(12) "internal conferences" (D&S pre-petition $69,755; D&S post-petition $37,081.67; BB post-petition $135,603), meaning that the Rose Parties believes the fees requested duplicate fees for internal conferences.

On May 13, 2019, on the eve of the hearing on Weston's fee application, Weston filed a supplemental brief and application for attorneys' fees.  In the supplemental application, Weston seeks an award for $71,945 billed by timekeepers at D&S from February 1, 2019 through the date of the application as well as estimated fees in the amount of $20,985 through the conclusion of the hearing on the application.  Weston also seeks an award of $52,053 for hours billed by timekeepers at BB as well as estimated fees in the amount of $688 through the conclusion of the hearing on the application.[9]  Thus, as supplemented, Weston requests a total award of $1,537,143.44 in reasonable and necessary attorneys' fees and costs.

In her supplemental brief, Weston responded to the Rose Parties' objections to her fees and costs.  Weston contended that all the legal services reflected in the time entries advanced the TTLA claim and are therefore recoverable.  Nevertheless, in the event this Court determines that

---

[9] At the hearing, Weston's counsel explained that some of these fees had not yet been invoiced when Weston filed her original application for attorneys' fees.

segregation is necessary, Weston identified the total amount of fees for specific categories of time entries that the Rose Parties contend are objectionable as follows:

(1) Fees relating to pre-suit efforts to obtain a temporary restraining order in the total amount of $2,895 (Objections #s 1, 1a, 11);

(2) Fees relating exclusively to DTPA issues in the total amount of $20,320.50 (Objections #s1, 1a, 11);

(3) Fees relating to "pure bankruptcy efforts" (e.g., prosecuting the non-dischargeability claim against Rose) in the total amount of $59,771.45 (Objection #9);

(4) Fees relating to particular tasks, claims and strategies that were not pursued by Weston in the total amount of $6,885 (Objection #s 1, 1a);

(5) Fees entered in error or as potential duplicates in the total amount of $1,232.50 (Objection #7);

(6) Fees for time spent monitoring the efforts to obtain a mental health examination of Rose in the Aaron lawsuit in the total amount of $2,770 (Objection #1, 1a); and

(7) Fees for time spent exclusively on the Aarons' counterclaim in the total amount of $3,932.50 (Objection #s 1, 1a, 10).

The time entries segregated by Weston's counsel comprise approximately 5% of the total amount of Weston's requested attorneys' fee award.

At the hearing on May 19, 2019, Mr. Santos testified about billing procedures at D&S and BB. He testified that he and Mr. Alaniz reviewed raw invoices before they were sent to Weston. If the invoices appeared to reflect an inefficient use of time, they would and did remove (or reduce) the charges before sending the invoices to Weston. The invoices, therefore, do not show any cancelled charges.

With respect to costs, Weston requests an award for those items that would be recoverable as "costs" as that term is defined in Texas Civil Practice and Remedies Code § 31.007(b). The Rose Parties object that most of these requested costs would not be recoverable under 28 U.S.C. § 1920. In her supplemental brief, Weston responds that 28 U.S.C. § 1920 would provide her with a far greater award of costs by covering more categories of item than § 31.007(b); however, she is requesting only what would be permissible under Texas law.

## II.    LEGAL STANDARD

Under the "American Rule," parties to litigation bear their own costs, including their attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247 (1975). The prevailing party in litigation "is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Id.* The default rule can be overcome by contract or statute. *See Travelers Cas. And Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 449 (2007).

Here, Weston sought to liquidate her state law claims against the Rose Parties and to obtain a declaration that Carol Rose, individually, could not discharge her obligations to Weston in bankruptcy. Weston prevailed on several of her state law claims, including a claim against the Rose Parties for violations of the TTLA. The TTLA provides in pertinent part that "[e]ach person who prevails in a suit under this chapter shall be awarded costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. REM. CODE § 134.005(b).

Attorneys' fees and costs are related issues. However, each requires a different analysis. The Court will address each in turn.

## III.    ATTORNEYS' FEES

Because Weston prevailed on state law claims, Texas law applies in determining the reasonableness of the requested attorneys' fees. *See, e.g., In re Kirk*, 525 B.R. 325, 335 (Bankr. W.D. Tex. 2015). Texas courts, like federal trial courts within the Fifth Circuit, apply the lodestar method to calculate reasonable attorneys' fees under statutes that involve fee-shifting provisions.[10]

---

[10] The lodestar method is essentially a short-hand version of the factors set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). In *Arthur Anderson*, the Texas Supreme Court outlined a factor-based method to assess reasonable and necessary attorney's fees. Those factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019).   The lodestar first requires the trial court to determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work.   *Id.*   The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar.   *Id.*   The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.   *Id.* (*citing El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012)).

General, conclusory testimony devoid of any real substance will not support a fee award. Instead, a claimant seeking an award of attorneys' fees must prove the attorneys' reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought.   *Id.* at 501-502.   "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services."   *Id.* at 502.   Although billing records are not required, they are "strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested."   *Id.*

Here, counsel for Weston kept detailed, contemporaneous time records.   They provided the Rose Parties and the Court with copies of their invoices to Weston, which contain thousands of entries by individual timekeepers.   The records of D&S and BB contained minimal redactions. The Rose Parties analyzed all the time records and raised thousands of objections to individual entries and charges.

---

performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.   *Id.*

In determining a reasonable fee award, as set forth above, courts exclude all time that is excessive, duplicative, or inadequately documented. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Courts that find hours are too high may make line-item cuts or "use 'a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous.' " *Tow v. Speer*, 2015 WL 12765414, at *6 (S.D. Tex. Aug. 17, 2015) (quoting *Compass Bank v. 288/59 GP LLC*, 2011 WL 739341, at *2 (S.D. Tex. Feb. 23, 2011)). An hour-by-hour analysis contemplates that a judge can "feasibly and expeditiously engage in such a precise review." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). If "fee documentation is voluminous," an hour-by-hour review may be "impractical" and "a waste of judicial resources." *Id. See also, e.g., Hopwood v. State of Tex.,* 236 F.3d 256, 279 (5th Cir. 2000) (Fifth Circuit concluded that district court did not abuse its discretion by ordering a flat, twenty-five percent reduction to attorney's hours because it was impractical for the court to wade through hundreds of time entries). If reducing by a percentage, a court must articulate the reason for selecting the percentage. *Loranger*, 10 F.3d at 783. Moreover, a court may not "double discount" by, for example, reducing hours through an hour-by-hour analysis and then including those hours in an across-the-board cut. *Bivins v. Wrap it Up*, 548 F.3d 1348, 1351-52 (11th Cir. 2008).

In this case, both the fee documentation and the objections are voluminous. The records supporting the fee application include thousands of individual entries by timekeepers D&S and BB totaling more than 4,800 professional hours. The Rose Parties object to many of these entries on multiple grounds for a total of approximately 7,000 individual objections. It would be neither an efficient use of judicial resources nor feasible for this Court to attempt to review every time

entry and to analyze the multiple objections to each entry. The Court conducted its own review of the evidence presented at the May 16th fee application hearing, including the time records submitted by Weston. The following factors inform the Court's decision regarding the reasonableness of the fees requested.

### A.  Billing Error

As a preliminary matter, the Rose Parties object that D&S's original application for attorneys' fees includes an erroneous $25 duplicate charge. At the hearing on May 16th, counsel for D&S agreed to remove that charge as well as an additional $1,207.50 for a total reduction of $1,232.50.

### B.  Segregation of Recoverable and Non-Recoverable Fees

The Court now turns to the balance of the attorneys' fees that Weston seeks to recover as advancing her TTLA claim ($1,477,157.49, which is $1,478,389.99 less $1,232.50). A party seeking to recover attorneys' fees has the burden to show that the fees were reasonable and necessary, which, among other things, requires the party to show the fees were incurred on a claim that allows recovery of such fees. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991). When legal services advance claims for which the recovery of fees is permitted as well as claims for which the recovery of fees is not permitted, the party must segregate and exclude the fees for services related to the claims for which fees are not recoverable unless "the discrete legal services advance[d] both [the] recoverable claim and the unrecoverable claim." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006). *See also Petras v. Criswell*, 248 S.W.3d 471, 481 (Tex. App. – Dallas 2008, no pet.). The need to segregate fees is a question of law, while the extent to which certain claims can or cannot be segregated is a mixed question of law and fact. *Tony Gullo*, 212 S.W.3d at 312–13.

Segregation of fees does not require separate time records for each claim. *Tony Gullo*, 212 S.W.3d at 314. Instead, an opinion assigning a percentage to recoverable and unrecoverable fees may be sufficient. *Id.* The parties in this case disagree about whether any of the time spent by Weston's counsel is unrecoverable. Weston contends that her counsel's time should not be reduced at all, because everything they did served to advance her TTLA claim and has been necessary to recover an award of attorneys' fees and costs. The Rose Parties contend that counsel for Weston spent 75% of their time pre-petition, and 50% of their time post-petition, on matters other than the TTLA claim, and the Rose Parties propose to reduce their fees by those percentages. Counsel for Weston and Rose testified at the hearing in support of their respective positions regarding whether or how much to reduce the requested fees based on an apportionment between recoverable and non-recoverable time.

The Rose Parties' objections fall into two categories. First, the Rose Parties object that some of Weston's attorneys' fees are not recoverable at all because they did not advance Weston's TTLA claim. The Rose Parties object that fees relating to core bankruptcy matters, for example, did not advance Weston's TTLA claim. Second, the Rose Parties object that some of Weston's attorneys' fees are only partially recoverable because they did not specifically advance Weston's TTLA claim. The Rose Parties object that some of the time Weston attributes to the TTLA claim should be allocated to the other claims she was simultaneously pursuing. The Court will address the bankruptcy fee issue first.

### 1. Attorneys' Fees for Core Bankruptcy Matters

The Rose Parties contend that Weston may not recover her attorneys' fees or costs incurred in connection with core bankruptcy matters (such as preparing proofs of claim) or to litigate dischargeability. The Rose Parties object to the total amount of $219,963.50 in attorneys' fees as

unrecoverable bankruptcy fees, which includes $27,602.50 charged by D&S and $192,361 charged by BB. In support of the objection to fees spent pursuing a judgment of non-dischargeability, the Rose Parties cites in *In re Kinkaid*, 445 B.R. 731, 743 (Bankr. N.D. Tex. 2011), where Judge Houser explained: "Generally, bankruptcy courts have refused to award attorney's fees in dischargeability litigation because there is no specific provision of the Bankruptcy Code authorizing such awards

Here, the Court tried Weston's TTLA claim and her non-dischargeability action at the same time. The post-petition fees relating to the non-dischargeability action appear to have been necessary to establish her TTLA claim. Indeed, the non-dischargeability judgment was a byproduct of Weston's successful TTLA claim. As the Fifth Circuit has explained: "Logically, the litigation necessary to prove non-dischargeability also proves the basis for and amount of the debt." *See In re Morrison*, 555 F.3d 473, 479 (5th Cir. 2009). Thus, attorneys' fees can be recovered in a non-dischargeability action if authorized by contract or a state statute such as the TTLA. *Cohen v. de la Cruz,* 523 U.S. 213, 223 (1998); *see also Travelers,* 549 U.S. at 451–52 (prevailing party has a claim for attorneys' fees if permitted by applicable state law, regardless of fact that fees were incurred litigating issues of federal bankruptcy law).

On the other hand, some the time spent by Weston's counsel, such as time spent on her request for equitable subordination of the Rose Parties' claims in bankruptcy to hers, related to future collection efforts and were not necessary to establish the TTLA claim. Likewise, time spent on "core" matters in the bankruptcy case, such as monitoring the Rose Parties' attempts to confirm a joint plan of reorganization, did not advance Weston's TTLA claim. Some reduction to the requested fees is warranted.

In her supplemental response to the Rose Parties' objection to her requested fee award, Weston identified $59,771.45 in fees relating to " 'pure bankruptcy efforts' (e.g., prosecuting the non-dischargeability claim against Rose)"  Based on the Court's knowledge of the underlying bankruptcy case, its observations during trial, and its review of the billing records, the Court believes this amount should be much higher.  The billing records reflect that D&S focused on establishing Weston's claims and their non-dischargeability in bankruptcy.  Only a small amount of the time billed by D&S involved the main bankruptcy case, and some awareness of the main bankruptcy case would have been strategically necessary in the adversary proceeding.  In contrast, the billing records of BB include a significant amount of time spent on matters unique to bankruptcy.

In addition to extensive work on discovery and trial issues for this adversary proceeding, BB's charges prior to the entry of this Court's original memorandum opinion and order include time spent on Rose's claimed exemptions, equitable subordination, applications to employ attorneys, the Rose Parties' bankruptcy schedules, withdrawal of the reference, insurance payments, motions to extend exclusivity, and reviewing monthly operating reports.  It appears to the Court, based on its review of BB's time entries, that approximately 30% of the time spent by BB from the petition date through the entry of a memorandum opinion and order in this adversary proceeding related to core bankruptcy matters.  The Court, therefore, sustains the Rose Parties' objection, in part, and reduces Weston's request for BB's fees in her original fee application by 30% or $134,276.05 (from $447,586.82 to $313,310.32) for non-recoverable bankruptcy-related fees.[11]  This reduces the total attorneys' fees (exclusive of costs) from $1,477,157.49 to $1,342,881.44.

---

[11] That is not to say that BB's fees for bankruptcy-related work were unreasonable or not otherwise chargeable to its client – only that such fees are not compensable by the Rose Parties.

The underlying bankruptcy case was nearing confirmation at the time this Court entered its original memorandum opinion and order in this adversary proceeding. Following the entry of this Court's memorandum opinion, BB's focus turned to the fee application. Weston submitted BB's time entries for this period with her supplemental application for fees. The Court, having reviewed BB's unredacted time entries from February 2019 through the end of April 2019 finds that, to the extent the Rose Parties object to this time on the grounds that it relates to core bankruptcy matters, the objection should be overruled.

**2. Attorneys' Fees that Advanced the TTLA Claim**

At trial, Weston contended that Rose committed "theft" and was liable for damages under § 134.003(a) of the TTLA by inducing her to purchase horses and embryos at the dispersal sale through deception, including "puff" bidding by the Aarons, the secret use of reserves, and misrepresentations by the auctioneers and announcers. Under the TTLA, "'[t]heft' means unlawfully appropriating property or unlawfully obtaining services" as described in several provisions of the Texas Penal Code. The Court found Weston established that Rose violated the TTLA and § 31.03 and awarded her actual damages as well as rescission with respect to her purchase of SHINERS LENA DOC at the auction.

Mr. Davis and Mr. Alaniz state in their declarations in support of the fee application that segregation of Weston's attorneys' fees among her state law claims was not required or possible. They explain that all of Weston claims arose out of the same transaction and depended on the same facts and use of the same documents and witnesses. Specifically, all of Weston's claimed involved the common element of fraud and/or deception. Rose's false representations to Weston were one of the elements of Weston's successful TTLA claim, and the auctioneers and others associated with Rose aided her in the deception. As such, Weston contends that the evidence necessary for

17

the TTLA claim necessarily overlapped with the evidence necessary for all the other state law claims she asserted, including claims against non-debtors such as the auctioneers that this Court did not try.

The overlap, however, was not complete. The Court disagrees, based on its review of the evidence, on its experience, and on the Court's knowledge of this case, with Weston's assertion that 100% of her counsel's work on mixed issues would have been necessary even if she had only asserted her TTLA claim. Weston's assertion fails to account for the relatively narrow nature of that claim or the other disputes involved in the litigation amongst the parties.

While some of the work by Weston's counsel relating to the qualification of Rose's auctioneers, the advertisements of the complete dispersal sale, "puff bidding," and the conduct of the auction, just to state a few examples, would have been necessary to establish the deception undergirding her TTLA claim, not every discrete legal action relating to these issues by her counsel advanced the TTLA claim. Furthermore, Weston's counsel spent time on other matters such as defending Weston from a tortious interference claim asserted against her by the Aarons and seeking to intervene in the Aaron Ranch Lawsuit. Weston asserted independent claims against the auctioneers and an attorney, Lewis Stevens, who assisted Rose in connection with the auction and dispersal sale. Weston's counsel also monitored a dispute in the Aaron Ranch Lawsuit over Rose's mental capacity, among other things, and Weston ultimately abandoned her TDTPA claim. In light of the foregoing, and based on the Court's own review of the time records, as well as the other issues addressed below, the Court finds that 80% of the time spent by counsel for Weston is recoverable as relating to her TTLA claim.

## C.  Other Specific Objections

The Court now turns to the specific objections raised by the Rose Parties to individual time entries.  As previously discussed, the Rose Parties frequently object to specific time entries on multiple grounds.  The Rose Parties contend that these specific objections support her proposed percentage reductions for non-recoverable fees inasmuch as the Court would arrive at approximately the same fee award she proposes if the Court sustained all the Rose Parties' objections.  The Court agrees, as discussed below, that some of these factors support a reduction of the requested fee award.

### 1.  Attorney Billing Rates

A party seeking fees bears the burden to prove its attorneys' fees are reasonable for the market.  *SCA Promotions, Inc. v. Yahoo! Inc*., 2016 WL 8223206, at *7 (N.D. Tex. Nov. 21, 2016), *report and recommendation adopted*, 2017 WL 514545 (N.D. Tex. Feb. 8, 2017).  *See also, e.g., Yumilicious Franchise, LLC v. Barrie*, 2015 WL 1373548, at *3, *6 (N.D. Tex. Aug. 21, 2015) (reducing the hourly rates of BB partners and associates to reflect the Dallas legal market).  To meet this burden, a party must show that its attorneys' rates are in line with those "prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation."  *Id.*  Here, the Rose Parties do not object to the rates charged by D&S, but they argue that the billing rates charged by BB were unreasonable in the Dallas market and for this case.[12]

At the hearing, counsel for Weston explained that Weston retained BB after the Rose Parties filed for bankruptcy.  Weston recognized she needed a bankruptcy specialist to navigate the new hurdles created by bankruptcy, and she chose the best she could get.  There is no dispute

---

[12] Mr. Alaniz charged $850 an hour, associates charged in excess of $500 an hour, and paralegals charged between $275 and $305.

about the qualifications of the BB professionals or the quality of their work.[13]  Nonetheless, the
Court agrees that BB's rates are excessive considering the relatively small amount of damages and
the complexity of the bankruptcy issues in this case.  The blended rate of the D&S professionals
was $238.83 ($957,077.70 in total fees (including the supplemental fee request) divided by 4007.3
in total hours), according to the Court's calculations, while the blended rate of the BB professionals
was $622.30 ($499,639.82 in total fees (including the supplemental fee request) divided by 802.8
in total hours).  Mr. Gordon, the lead bankruptcy attorney who represented the Aarons, charged
$250 an hour.  The lead bankruptcy attorney at BB charged $850 an hour.[14]  Based on the Court's
review of the record and having presided at trial, it appears that Mr. Santos was the lead trial lawyer
and BB provided bankruptcy expertise and trial support as to the TTLA claim.  The bankruptcy
issues in this case were straightforward.  In short, Weston retained a Rolls Royce for a Ford pickup
case.  While Weston is certainly entitled to the best counsel she can afford, she can only shift her
reasonable fees to the Rose Parties.  A downward adjustment to the fees charged by BB is
warranted.

### 2. "Vague" and "Block Billed" Objections

The Rose Parties object to the use of "block billing" by counsel for Weston.  Many of the
entries the Rose Parties object to as block billed they also object to as "vague" because they could
not precisely determine how much time was spent on particular tasks.  The Rose Parties seek an
across-the board reduction of the requested fees based on block billing, citing to cases that reduced
fees by 10-40%.  *See, e.g., Fralick v. Plumbers and Pipefitters Nat. Pension Fund*, 2011 WL

[13] Indeed, this case involved many qualified attorneys and other professionals.  Mr. Santos at D&S is a skilled trial lawyer, and counsel for the Rose Parties, including Mr. Connor, just to name one, were thorough and well prepared.
[14] The Court has approved comparable rates for bankruptcy lawyers in other cases involving more complex issues of bankruptcy law.

487754, at *3-4 (N.D. Tex. Feb. 11, 2011) (applying a 10% reduction where daily entries were
block-billed); *Paris v. Dallas Airmotive, Inc*., 2004 WL 2100227, at *9, 11 (N.D. Tex. Sept. 21,
2004) (applying 40% reduction for block billing where entries were month to month).

The term "block billing" refers to the "'time-keeping method by which each lawyer and
legal assistant enters the total daily time spent working on a case, rather than itemizing the time
expended on specific tasks.'" *Glass v. United States,* 335 F.Supp.2d 736, 739 (N.D. Tex. 2004)
(citing *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.,* 82 F.3d 1533, 1534 n. 15 (10th Cir.
1996)).  The Aarons do not dispute that their counsel engaged in block billing; FBT, H&G and the
Ashmore law firm itemized their tasks, providing detail as to the various types of work performed
on a particular day, but they did not itemize time on a per-task basis.  Because FBT, H&G and the
Ashmore law firm engaged in block billing, the Court must next decide whether this warrants a
percentage reduction in the fee applications.

Block billing is not *per se* improper under Texas law, so long as the entries provide
meaningful review and are detailed enough to provide some indication of the time spent on various
parts of the case.  *See State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 100 (Tex. App. — Houston
[14th Dist.] 2016, no pet.) (citing *John Moore Servs., Inc.* 2016 WL 3162206, at *6-7); *FinServ
Casualty Corp. v. Transamerica Life Ins*., 523 S.W.3d 129, 142 (Tex. App. — Houston [14th Dist.]
2016) (noting "monthly billing statements that included the type of service provided, the name of
the attorney providing the service, the date the service was performed, the hourly rate, and how
much time the work required… was sufficiently detailed to allow for meaningful review.").  A
"block-billing technique" is "distinguishable from *El Apple,* in which there was far less evidence

of attorney's fees, and it was presented in a far more summary fashion"[15] and "distinguishable from the aggregate and conclusory time estimates provided in *Montano*"[16] because entries "describe the work that was done, specify the date the work was done, provide the total amount of time spent accomplishing the tasks, and identify the person who did the work." *John Moore Servs.,* 2016 WL 3162206, at *6.  Therefore, before reducing the requested fees based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended.

Here, the time entries of D&S and BB included details about the nature of the work, who did it at what rate, what day the work was performed, and the time worked.  *See El Apple,* 370 S.W.3d at 762.  The entries were typically detailed enough to provide some indication of the time spent on various parts of the case.  For example, on January 26, 2017, Mr. Davis billed .8 hours for "Correspondence with counsel for Aaron regarding deposition; review Scheduling Order for amended version; review correspondence regarding phone records and subpoena."  The Rose Parties object to this entry because it is block billed, but the Rose Parties make no effort to identify what portion of the entry was vague.  In many instances, including this one, the time entry, or surrounding time-entries, provides some context but not necessarily enough to determine if all the time advanced the TTLA claim.  The Court finds that the time entries of D&S and BB are adequate to enable a determination of the reasonableness of the hours expended in some instances but not in many others.  The Court, therefore, finds that this factor supports a downward adjustment.

### 3.  Non-Working Travel Time

---

[15] In *El Apple,* an affidavit in support of the application for attorney's fees included the aggregate number of hours worked by each of two attorneys, 700 hours and 190 hours, without any supporting evidence.  *El Apple,* 370 S.W.3d at 759.

[16] In *Montano*, the attorney estimated that he spent six hours per week for 226 weeks working on the case, for an aggregate of 1,356 hours.  *Montano,* 414 S.W.3d at 736. !

The time records for Weston's counsel include numerous charges for travel time.  The Rose Parties object to fees for non-working travel time and seek a reduction of at least 50% in accordance with Fifth Circuit practice.  *See, e.g., Lewallen v. City of Beaumont*, 2009 WL 2175637, at *10 (E.D. Tex. Jul. 20, 2009) ("In the fee shifting context, compensating travel time at 50% of actual time is common practice within the Fifth Circuit.").  Texas likewise permits the recovery of travel time – sometimes with a reduction, and sometimes with no reduction – depending on the reasonableness of the requested fee award.  *Wilkerson v. Atascosa Wildlife Supply*, 307 S.W.3d 357, 359 (Tex. Civ. App. – San Antonio, 2009).

The Rose Parties seek to reduce numerous entries by 50%, for a total reduction of $117,376, because the entries include travel time and, according to the Rose Parties, do not suggest that counsel was simultaneously performing legal work.  For example, a time entry by Mr. Davis on May 21, 2018 for 9.5 hours, includes "travel to" a location among a list of other activities billed to Weston that day.  While it is certainly possible that counsel sometimes, often, or always worked on the case while traveling, counsel did not specifically address the Rose Parties' objections to these entries in their briefing or at the hearing.  The Court, therefore, finds that D&S and BB failed to carry their burden to establish the reasonableness of the amount of these requested fees.  This factor supports a downward adjustment.

### 4.  "Billing Judgment" and "Internal Conferences" Objections

A party seeking recovery of fees must show that its counsel exercised "billing judgment." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012).  "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co*., 448 F.3d 795, 799 (5th Cir. 2006).  When a party fails to supply such proof, the proper remedy is a "reduction of the award by a percentage

intended to substitute for the exercise of billing judgment." *Id.* As the U.S. Supreme Court has explained, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley v. Eckerhart,* 461 U.S. 424, at 434, (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)).

In determining whether the time spent on a matter constitutes a reasonable number of hours, a court pays attention to whether cases are overstaffed and whether the hours expended were excessive, redundant, and unnecessary. *See Binta B. ex rel. S.A. v. Gordon,* 710 F.3d 608, 627 (6th Cir. 2013) (hours that are "excessive, redundant, or otherwise unnecessary" are hours that are not "reasonably expended"). However, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice,* 563 U.S. 826, 838 (2011). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* Thus, "there is no requirement ... that district courts identify and justify each disallowed hour." *Mares v. Credit Bureau of Raton,* 801 F.2d 1197, 1202 (10th Cir. 1986) (citation omitted). "Nor is there any requirement that district courts announce what hours are permitted for each legal task." *Id.*

Here, the Rose Parties object that the invoices do not show that counsel exercised billing judgment by writing off hours as unproductive, excessive or redundant. At the hearing, however, Mr. Santos explained that he (at D&S) and Mr. Alaniz (at BB) did, in fact, write off hours when they determined time had not been spent efficiently. He explained that they made these changes to the raw invoices and that the deleted entries do not appear in the invoices sent to Weston and produced to the Rose Parties.

The Rose Parties also object to time spent by Weston's attorneys conferencing with each other. The Rose Parties identify numerous block billed entries that contain a reference to a conference with another attorney. The Rose Parties identify $69,755 billed by D&S pre-petition for time that included an internal conference; $37,081.67 billed by D&S post-petition for time that included an internal conference; and $135,603 billed by BB for time that included an internal conference.

There is no legal prohibition to litigating a case using a collaborative approach, and co-counsel may be reasonably expected to confer for a certain number of hours. *See Turner v. Oxford Management Services*, 552 F.Supp.2d 648 (S.D. Tex. 2008) ("work allocation between [the attorneys] was appropriate … The Court also finds that most of Tomlinson's contributions to this litigation—performed as a highly compensated, experienced partner—were reasonable, valuable, and necessary."). The billing records reflect that D&S and BB did not over-staff this case and, in fact, they attempted to minimize costs by using associates and paralegals where practicable. The Rose Parties have not provided this Court with authority that would justify excluding recovery for any entry that merely includes an internal conference.

The Rose Parties also object that many of the time entries by paralegals do not constitute substantive legal work but instead fall more in the category of clerical work. The Rose Parties' objection focuses on a paralegal at D&S who billed a total of 862.6 hours at $125 an hour for the total amount of $107,814.58. These time entries include time spent organizing documents, preparing notebooks, calendaring dates, converting documents into PDFs, and making copies. !

Under Texas law, "[a] party may separately assess and include in the award of attorneys' fees compensation for a legal assistant's work, if that assistant performs work traditionally done by an attorney." *Multi-Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex.

App. – Dallas, 1990, writ den.).  When a party seeks payment for work completed by paralegals or legal assistants, courts require information such as (1) the qualifications of the legal assistant to perform substantive legal work, (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney, (3) the nature of the legal work performed, (4) the legal assistant's hourly rate, and (5) the number of hours expended by the legal assistant. *El Apple I*, 370 S.W.3d at 763 (quoting *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 504 (Tex. App.—Texarkana 2005, no pet.)).  Fees for paralegals and legal assistants "have been denied absent such proof." *Id.* (citing *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 248 (Tex. App.—Houston [14th Dist.] 1992, writ denied)).

Here, Mr. Santos testified at the hearing that his paralegal is highly qualified, worked under his direction, and her efforts streamlined his own legal work and trial presentation.  This Court does not doubt the qualifications of his paralegal or that her efforts were helpful to his presentation at trial.  Her hourly rate was reasonable, and the number of hours she expended was reasonable under the circumstances of this case.  However, the billing entries reflect that much of her work was litigation support rather than substantive legal work, and a downward adjustment to the requested award of her time is warranted.

### 5. "Results Obtained" Objection

In addition, the Rose Parties object that the fees Weston is seeking far exceed the damages she was awarded.  As the Fifth Circuit has recognized, the larger the ratio between the judgment sought and recovered and the fees requested, the more unreasonable the fees. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998).  This accords with Texas law.  In Texas, money damages are not necessary to be a "prevailing party" entitled to attorneys' fees and costs: "A defendant can obtain actual and meaningful relief, materially altering the parties' legal

relationship, by successfully defending against a claim and securing a take-nothing judgment on the main issue or issues in the case." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 486 (Tex. 2019). However, it is well settled that attorneys' fees must "have some reasonable relationship to the amount in controversy[.]" *Giles v. Cardenas*, 697 S.W.2d 422, 429 (Tex. App. — Austin 1985, writ ref'd n.r.e.). If a prevailing party unreasonably "overprepared" (or overreached) in a case, the losing party "should not be held liable for attorney's fees due to overpreparing." *Id.* at 430.

Here, D&S and BB expended more than 4,800 hours for total professional fees of $1,456,717.52 pursuing Weston's claims for violations of Texas Business and Commerce Code § 2-328, common law fraud, fraudulent inducement, fraud by nondisclosure, negligence, negligent misrepresentation, violations of the TTLA, violations of the TDTPA, and conspiracy, aiding, and abetting. Some of this time was spent pursing claims against the auctioneers and an attorney who assisted Rose with her "complete dispersal sale" for conspiracy, aiding and abetting. In addition, counsel for Weston spent time defending her from a tortious interference claim asserted by the Aarons. Weston prevailed on all her substantive claims against the Rose Parties (except her TDTPA claim, which she withdrew prior to trial). She obtained a damages award for her TTLA claim, a judgment on non-dischargeability, as well as the equitable remedy of rescission. However, Weston is only entitled to the fees and costs that advanced her TTLA claim.

Even though her potential actual damages award (exclusive of punitive damages) was never more than $500,000, Weston spent nearly $1.5 million pursuing her claims – including claims that did not accord her any right to her attorneys' fees. The Court agrees that the total hours spent and attorneys' fees Weston is seeking are excessive in light of the results obtained. This factor warrants a downward adjustment to the requested fees.

**D.  Conclusion Regarding Fee Request**

The Court is also an expert on reasonableness of fees and may use its own experience in deciding a fee award.  *C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 802 (Tex. App. – Houston [1st Dist.] 2004, no pet.); *Aquila Sw. Pipeline, Inc. v. Harmony Expl., Inc.*, 48 S.W.3d 225, 241 (Tex. App. – San Antonio 2001, pet. denied); *Matthiessen v. Schaefer*, 897 S.W.2d 825, 827 (Tex. App. – San Antonio 1994), *rev'd on other grounds*, 915 S.W.2d 479 (Tex. 1995); *see also Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980) (citations omitted). This Court conducted its own review of all the fee documentation and evidence presented.  Based on its review of the time records, its experience, and its knowledge of this case, the Court finds and concludes that 80% of the work by Weston's counsel was necessary and reasonable to advance the TTLA claim and, as such, a 20% reduction is a reasonable and a proper allocation in this case, which would reduce the requested fees to $1,074,305.19 ($1,342,881.49 multiplied by 80%).  In reaching this conclusion, the Court also took into account the nature and scope of the TTLA claim upon which Weston prevailed, the other claims asserted by Weston, the claims asserted against Weston by other parties, the lack of segregation, the billing rates, hours expended, the amount involved, the results obtained, and the skill of Weston's counsel, and the specific objections raised by the Rose Parties.  While some of these factors support a downward adjustment, as discussed above, those adjustments are included in the 20% reduction for non-recoverable fees, and any further reduction would be an impermissible double discount.  *See Bivins v. Wrap it Up*, 548 F.3d at 1351-52.

28

## IV.    Costs[17]

Weston is seeking to recover her costs through the date of this Court's memorandum opinion and order.  The Rose Parties object to most of the $58,753.45 in costs and expenses Weston is seeking to recover as falling outside of 28 U.S.C. § 1920 and, more generally, urges the Court to exercise its discretion to require each party to bear its own costs.  The Rose Parties also object that Weston failed to segregate her costs among her various claims.  Weston argues that taxable costs are determined by Texas law and that no such segregation was possible.

Specifically, the Rose Parties object to (1) filing fees ($1,237); (2) private process server fees ($957.50); and (3) transcript fees and related expenses ($56,558.52).  The Rose Parties urge the Court to deny these requested costs because they did not relate to Weston's TTLA claim and are not recoverable under 28 U.S.C. § 1920.  However, 28 U.S.C. § 1920 is not the governing law for determining Weston's recoverable expenses.

The prevailing party in a suit under the TTLA is entitled to court costs and reasonable and necessary attorneys' fees.  TEX. CIV. PRAC. & REM. CODE § 134.005(B).  When bankruptcy courts liquidate claims under the TTLA as part of a non-dischargeability action, state law governs the recoverable court costs.  *See, e.g., In re Kakal*, 2019 WL 2895980, at *3 (Bankr. S.D. Tex. Jul. 2, 2019) (awarding court costs recoverable under Texas law to a prevailing party under the TTLA in a non-dischargeability action).  In contrast, when bankruptcy courts merely declare a state court judgment non-dischargeable, the allowance of costs is governed by Federal Rule of Bankruptcy Procedure 7054(b) and 28 U.S.C. § 1920.[18]  *See, e.g., In re Healey*, 2018 WL 4808362 (Bankr.

---

[17] Weston is not seeking to recover any costs she has incurred since the Court entered its original memorandum opinion and order.

[18] Bankruptcy Rule 7054(b)(1) provides that "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." Section 1920 defines the "costs" as:

E.D. Tex. Oct. 2, 2018) (awarding costs recoverable under 28 U.S.C. § 1920 in an action seeking

a declaration that a state court judgment awarding damages and attorney's fees under the TTLA

was non-dischargeable).

> "Costs" is narrowly defined by Texas statutes as including the following:
>
> (1) fees of the clerk and service fees due the county; (2) fees of the court reporter
> for the original of stenographic transcripts necessarily obtained for use in the suit;
> (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules
> and state statutes; and (4) such other costs and fees as may be permitted by these
> rules and state statutes.

Tex. Civ. Prac. & Rem. Code § 31.007.  In general, Texas law restricts "costs" to the "fees and

charges required by law to be paid to the courts . . . for example, filing and service fees." *May v.

Ticor Title Ins*., 422 S.W.3d 93, 106 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also*

Tex. Civ. Prac. & Rem. Code § 31.007(b). "The expense of taking depositions is an item of court

costs and properly chargeable as such."  *Nolte v. Flournoy*, 348 S.W.3d 262, 271 (Tex. App. –

Texarkana 2011) (quoting *Wallace v. Briggs,* 162 Tex. 485, 348 S.W.2d 523, 527 (Tex. 1961)).

Expenses related to expert witness fees are not recoverable costs. *May*, 422 S.W.3d at 106.  *See

also Bundren v. Holly Oaks Townhomes Ass'n*, 347 S.W.3d 421, 440 (Tex. App.—Dallas 2011,

pet. denied) ("The general rule in Texas is that expert witness fees are not recoverable as costs of

litigation.").  Further, general litigation expenses such as the cost of copies are not to a prevailing

party under Texas law.  *In re Mud King Products, Inc.*, 525 B.R. 43, 61 (Bankr. S.D. Tex. 2015).

---

(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts
necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4)
Fees for exemplification and the costs of making copies of any materials where the copies are
necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6)
Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses,
and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Whether something was "necessarily obtained for use in the case is a factual determination to be
made by the district court."  *Fogelman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991).  Prevailing parties bear the
burden of establishing necessity.  *Id.*

*See also Gumpert v. ABF Freight Sys., Inc.*, 312 S.W.3d 237, 242 (Tex. App. – Dallas 2010) (the costs of videotaping depositions and obtaining copies of deposition transcripts "are ordinary expenses of prosecuting or defending a lawsuit for which there is no recovery authorized by statute or rule.")

Here, the Rose Parties object that Weston is seeking filing fees related to her failed attempt to intervene in the Aaron Ranch Lawsuit as well as private process server fees related to her claims against other defendants. The Court agrees that Weston's TTLA claim was not advanced by $879.13 in costs for filing fees for a plea in intervention and other vaguely described "E-file" and "Court Fees." The Court also agrees that $830 in services fees incurred to serve other defendants did not advance Weston's TTLA claim against the Rose Parties.

Finally, the Rose Parties object that Weston failed to segregate $56,558.82. in costs for deposition- and hearing-related transcripts among her claims. The Rose Parties also question whether all the depositions were necessarily obtained for use in connection with the TTLA claim. The requested costs are clearly recoverable under Texas law. *See, e.g., Nolte,* 348 S.W.3d 262, 271. However, the Court finds that the costs should be reduced by 20% (from $56,558.82 to $45,247.06) to segregate between time spent on recoverable and non-recoverable claims for the same reasons the Court reduced the requested award of attorneys' fees.

## V.    Weston's Supplemental Fee Request

After filing her initial request for attorneys' fees and court costs in February 2019, Weston filed a "supplemental" application in May 2019 that includes amounts not yet invoiced at the time of the original application[19] as well as attorneys' fees incurred in connection with her application for fees. The Rose Parties object that the supplemental fee request is untimely. The Rose Parties

---

[19] BB's last charge in the original application was on January 29, 2019, and D&S's last charge was on January 31, 2019.

argue that this Court's memorandum opinion and order required Weston to file a request for her attorneys' fees and costs by a date certain. According to the Rose Parties, this Court's order did not contemplate supplemental requests or "fees for fees."

Because Weston is seeking an award of her fees under Texas law for her TTLA claim, Texas law governs her fee applications. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002); *In re Pirani*, 579 B.R. 396, 410 (Bankr. E.D. Tex. 2017). Texas courts permit a prevailing party to recover for time spent in pursuit of attorney's fees. *See, e.g., Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 146 (Tex. App. – Dallas 2011) (allowing fees incurred proving attorney's fees on remand as part of the prevailing party's remedy); *Santos v. Texas Enterprises, Inc.*, 2010 WL 4054479, at *4 (Tex. App. – Austin, Oct. 15, 2010) (rejecting the argument that fees incurred in the pursuit of fees are not reasonable under § 38.001); *Doncaster v. Hernaiz,* 161 S.W.3d 594, 606-07 (Tex. App. – San Antonio 2005, no pet.) (affirming reasonableness of attorney's fee award under § 38.001, which included time spent for bench trial on attorney's fees); *City of Dallas v. Arnett,* 762 S.W.2d 942, 946 (Tex. App. – Dallas 1988, writ denied) (affirming $225,000.00 attorney's fee award under § 38.001, which included time spent for trial on attorney's fees). The pursuit in this case required Weston to respond to numerous global objections as well as thousands of objections to individual entries. She is seeking $71,945 in additional fees billed by D&S and $52,053 in additional fees billed by BB through the date of the hearing. She also seeks fees in the amount of $20,985 estimated to be incurred by D&S and $688 estimated to be incurred by BB through the conclusion of the hearing.

The Court, having considered the Rose Parties' objections, finds that the inclusion of uninvoiced time was harmless. The Court had not yet conducted a hearing on Weston's fee application when she filed her supplemental request. Furthermore, and Weston is entitled to

recover the reasonable time her counsel spent to recover an award of attorneys' fees under Texas law. The Court has already reduced her requested supplemental award 20% for the reasons previously discussed. No further reduction is warranted under the circumstances of this case.

## VI.    CONCLUSION

For all these reasons, the Court concludes that Weston is not entitled to her attorneys' fees relating to purely bankruptcy matters or for admitted billing errors. With respect to the balance of her requested attorneys' fees, the Court concludes that only 80% of those fees were reasonable and necessary and advanced her TTLA claim. Weston has established reasonable and necessary attorneys' fees in the amount of $1,074,305.19. In addition, Weston has established reasonable and necessary court costs in the total amount of $45,247.06.

**IT IS THEREFORE ORDERED** that the Weston Parties' Post-Trial Application for Attorneys' Fees [Doc. No. 172] is **GRANTED IN PART**.

**IT IS THEREFORE ORDERED** that Weston is awarded reasonable and necessary attorneys' fees in the amount of $1,074,305.19 plus reasonable and necessary court costs in the total amount of $45,247.06 pursuant to Texas Civil Practices and Remedies Code § 134.005.

Signed on 9/30/2020

_Brenda T. Rhoades_     MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE